This is WSOU Investments v. Arista Networks, 2023-2231. Good morning, Your Honors. Brett Mangrum for the appellant, Brazos. This appeal concerns primarily two claim limitations. The first limitation is a database maintaining IP multicast snooping information, and the focus of the dispute was on maintaining. The second limitation, that first limitation applies to all but three of the challenge claims. Not all the claims are challenged in the patent. The second limitation concerns the universal requirement recited in all of the challenge claim must be determined locally at the primary aggregation switch. For both limitations, the board erred in conflating together distinct claim terms, in fact, terms that appear in the exact same claim. So as I mentioned, I'm going to start with the first limitation, the database maintaining IP multicast snooping information. Claim 1 qualifies a chassis management module as storing the snooping information within the database. In an antecedent limitation, the snooping information is introduced as being maintained by the database. The use of maintaining and storing in the same claim gives rise to the rebuttal presumption that those terms connote different meanings under the patent, and nothing in the intrinsic evidence rebuts that presumption. On appeal, ERISTA actually admits that storing and maintaining connote different meanings. We agree, and that's been our argument from the beginning. The 447 patent consistently used the words maintain, maintaining, or maintains to describe a certain set of operations, and it separately uses storing or stores or stored to describe different operations. So there's never an instance where you have those two terms used interchangeably. I also want to point out that the omission from claim 1, independent claim 1, of the limitation, a database maintaining IP multicast snooping information is rendered more important by its omission from the only other independent claim at issue, and that is independent claim 15. So there's two independent claims at issue. The first separately requires a database maintaining IP multicast snooping information. The second independent claim doesn't have that limitation, and to suggest when claim 1 says you need to maintain IP multicast snooping information, the database is the element that does it, and a separate element in claim 1 says storing, that element stores the IP multicast snooping information in the database, our position has always been those are two different operations attributed to two different claim elements, and both must be shown. The problem that we identified from the outset, even before trial was instituted, was the original petition says you're maintaining because you store. They didn't separately address maintaining as a distinct operation, not only in the sense of the word maintaining, but the fact that it's attributed to a different claim element. So in your view, what is the difference in this patent between maintaining and storing? Sure, I think the most helpful description in the patent is figure 8, and that's where the word maintaining and maintain appears. And the description at the highest level of maintaining, it describes maintaining in terms of deleting or flushing outdated IP multicast snooping information, and this is done to facilitate synchronization between separate aggregation switches. So you have a local one where the database resides, and that's the one that's maintaining. You have a remote aggregation switch, and to synchronize when you delete or flush outdated information you maintain. That's what the description says. Let me read to you. When figure 8 is introduced, the description of figure 8, in the written description it says, quote, figure 8 illustrates a schematic block diagram of an embodiment for maintaining the... Where exactly are you reading, if you could give us... Sure, that is on column 16, lines 38 through 40. Right. Go ahead. And I'm just reading those two lines. It describes, the word maintaining is used in describing what figure 8 is showing. And the very next line states, and this is at column 16, lines 41 through 44, when a MAC address in the MAC HDI forwarding table has not been updated during the aging time, the entry will be deleted or flushed from the table, end quote. If you go down to lines 48 through 50 of the same column, it describes a mechanism used to decide when to delete or flush obsolete information. And then on the following column, column 17, lines 26 to 27, you again have this theme that similarly describes the maintaining of figure 8 as involving deleting an entry from the MAC HDI forwarding tables. Column 17, which lines? That's 26 to 27. Now, on appeal, Arista attempted to discount figure 8 and its description as irrelevant to maintaining, and their argument was, well, it's a process for keeping MAC forwarding tables synchronized. But there could be no question that the word maintaining and maintains appears in the description of figure 8, and therefore it certainly is relevant to what maintaining means in the context of the patent. But I also want to draw your audience's attention to, there's a parenthetical that appears later on. It's at column 19, lines 38 to 41. And there, in a parenthetical, the patent says, it describes, let me just read the statement. The IP multicast snooping information can be transferred between the aggregation switches using proprietary messages via the interchassis IPC, shown in figure 8. So the argument that figure 8 has nothing to do with IP multicast snooping information and it's something else is defeated by what the patent says about figure 8. The patent says figure 8 is all about IP multicast snooping information. It just describes it at a very detailed level, and it describes it in the context of maintaining. And so our position has always been that maintaining does not mean storing. Instead, it's, in fact, in some ways it's just the opposite, because maintaining refers to the way in which switches that are not physically connected, connected through communication but physically remote from one another, it's the way in which they coordinate when they delete or flush obsolete information. Now, to be fair, we didn't offer an affirmative construction of maintaining below, and no party did, and the board didn't ever affirmatively construe maintaining. Instead, our focus was, when we looked at the petition and saw that maintaining was completely omitted from the arguments, it was sufficient for us to say, well, maintaining is not storing, and you say maintaining is storing. And so we've always offered and relied upon a negative construction that if maintaining isn't storing, then the petition is deficient on its face for failing to address a distinct claim limitation. However, if the case should be remanded to at least have the board consider an affirmative definition to clarify the record, then that would be a basis to remand. But our position would be, even on remand, the petitioner, RISTA, will necessarily, by law, be restricted to the argument set forth in its petition, and in its petition, it ignored that limitation. So it's kind of stuck. I mean, even if it wants to describe what maintaining means, the petition doesn't give an argument. I can understand how you could argue that you can have storing without maintaining, but explain to me how you can have maintaining without storing. Well, what's being maintained is a type of information, right? And so... Well, it's information. Right, right. It's a type of information. While it's being maintained, then it's being stored, while it's being maintained, right? Well, I think that's the problem with conflating those two terms. You have to understand what maintaining means in the context of the patent, and it's maintaining is a process by which you decide whether information in a database needs to be deleted or purged, because it's not... No longer, it's obsolete. And you want all these switches to have that same type of timing in terms of when information is deleted or purged. And so maintaining refers to a coordination of deletion. But to go back to my question, maintaining also implies, it seems to me, storing. Well, maybe as a prerequisite, but not as in terms of its scope. If you're deleting something from a database, it has to be there to be deleted. But our position is, when you store something, you're not maintaining it. Maintaining... That was my question. I can understand storing without maintaining, but not maintaining without storing. That's fair as long as the court recognizes that they are different operations, they're being performed by different elements, and the database's job is to say, should this information be deleted? And if it is, it deletes it, and communications are sent to other switches saying, we're deleting, and you should too. And whereas storing is simply what the chassis management module does, it's a different element, to put information into the database. So we submit that those are distinct limitations attributed to different elements, and both need to be shown, and ARISTA failed to do that. The board also erred in its final decision in saying, it need not address patent owner's argument that maintaining is distinct from storing. The board failed to recognize that we raised that argument, not only in... So ARISTA offered two alternative theories for the database limitations, but our argument that storing doesn't mean maintaining applied equally. It was a universal argument to both theories. The board said, well, we're only going to address, we're going to find this argument reasonable and persuasive, and therefore we're not going to address patent owner's argument that storing doesn't mean maintaining. That was error, because our argument applied equally to both, and we addressed that same argument in addressing both of the alternative theories that ARISTA raised. I also want to point out that the argument's not new, and the board found that it wasn't new. ARISTA argues on appeal that we never offered a negative construction, and the board disagreed, and the board recognized that was our position even before trial. Now ARISTA's belated attempt on appeal to rewrite maintaining as keeping or holding should not only be rejected as untimely, unexplained, and unsupported, but it would also exclude preferred embodiments. As I mentioned, maintaining is the process of deletion, right? It's a process of coordinated deletion. So to the extent the idea is, well, you keep and hold it indefinitely, that would defeat the deferred embodiment that says at specific times and under specific conditions, we coordinate flushing. I'm going to reserve the remainder of my time for the chassis management module determining unless there's other questions. So on this issue as well, it's a problem with the board, at least implicitly, interpreting determining to mean using. Our position has always been that because the 447 patent equates determining to creating, and because the 447 patent requires the multicast index to not only be created, but each claim also says once it's created or determined, it's used. So our problem with the board's findings is the board said, look, we find that the multicast index was shown to be determined, it would have been obvious, because it's used to build something else. That finding is problematic for several reasons. Again, all the claims require that the multicast index be locally determined at the primary switch, but as a separate and distinct limitation, that same multicast index must then be used universally by all switches. So to suggest that determining means using would conflate those two distinct limitations. What exactly do you mean by determining the term? Yeah, the 447 patent is, in this instance, it is helpful in the sense that there are two different words that are used as synonyms. Like for maintaining, it was always the word maintain, but for determining, the 447 patent used the word creating, and that's at 23 lines 14 through 18, and it also uses on the same column lines 57 through 59 the word computing. Now, it's described in a lexicographic statement, and the parties don't dispute that it's lexicography. It is described as a unique identifier of an ingressing multicast flow, and that it is determined based on three input elements. One, the IP source, two, the destination addresses, and three, the ingress VLAN. But again, that uses the term determined, and what I'm really trying to understand is what is your position as to what that term itself means? Well, so again, we offered the negative construction below that it's not using, and no party offered an affirmative construction. What do you think it is? Yeah, our position is creating. So it doesn't exist, right? It's not something that's received from an external source. It is actually locally created. It's computed, it's calculated based off input elements, and before that creation process, it actually doesn't even exist. So it is the primary switch that comes up with this new multicast index, and then it shares it elsewhere. It says, here's what we're going to use, and here's how it's important we want to share this elsewhere, so there's a coordination between switches. Now, the problem with the theory set forth in the petition is that... You're well into your rebuttal time. Sure, yeah. Do you want to save it or continue? I'm going to continue it on this point. All right. The problem with the theory in the petition was they say it's, they acknowledge, even their own declarant acknowledges that what they rely on for the multicast index is received from an external source, and then it's only used locally, and our argument from the beginning is, because the claim language distinguishes receiving things, because that's also of their elements in the claims, from an external source of determining, the determining requires local creation, and that kills their argument. They've also newly argued on appeal that a new claim construction, improperly belated introduction on appeal, that determining means assigning, and our position has always been, that can't be the case either, because when you look at dependent claim 13, there's an additional limitation for the same element, the chassis management module, and that element is described, the chassis management module is further described in 13 as allocating a multicast index. Once it's created, you allocate it to a multicast flow. And so to suggest, well, the primary switch receives from an external source, the index, and then it allocates it or assigns it to a multicast flow, that's determining, that's defeated by the claim language itself. And I've used my time, so thank you. Well, you've just about consumed all of your time, entitling you to no rebuttal time, but we'll give you a minute. Yes, sir. Thank you, Your Honor. Mr. Mocker. Thank you, may it please the Court. Helmut Mocker for Appellee. The Board's decision here is supported by more than substantial evidence, which is the it should be affirmed. The petition demonstrated why a person of ordinary skill would start with SANE and combine that with the teachings of Subramanian to arrive at the challenge claims. The combination, the motivations, and the understanding of a person of ordinary skill was supported by the unrebutted declaration of Dr. Black. Process makes two primary arguments on appeal, as you heard, one toward the database limitation, one towards the multicast index limitation, putting aside that neither argument was timely raised below. Neither argument has merit either. The fundamental problem with Brazos' arguments is twofold. Now, the Board addressed the arguments on their merits, I take it. And given that, does, is your position that nonetheless we could dismiss the arguments on the ground that even though the Board addressed them, that it could have thrown them out on waiver and, and should have, or could we hold, uphold the decision on waiver grounds? I think the decision could be uphold on numerous grounds. One, there's also waiver as well. And this Court could find on a case-by-case basis that there was waiver. But when the Board actually addresses the merits, I'm trying to get at a category of cases in which, okay, an argument isn't made, but the Board says, okay, we're going to go ahead and address it on the merits. Can we then, within the construct of chenery, can we come in and say, ah, but we don't have to reach the merits because this was not timely raised by, before the Board, even though the Board, in effect, waived the waiver argument? I don't think that the Board waived the waiver argument. Okay, but even though the Board went to the merits, you, you understand the point I'm trying to get at. I guess, I guess I disagree. If we can effectively rule on waiver, notwithstanding the Board's having decided the merits, and if so, what case says we can do this? I disagree that the Board did that. I think, as my other, my opponent here is pointing out, well, there's arguments that they raised and they're complaining that they weren't addressed. And so, to the extent the Board was segregating out, as it should do under its discretion when there's these new arguments, it did that. This Court can then look back and say, either that was correct, or yes, we hold that waived as well. I would point the Court to the Fingen case that we cited, where there's a very similar situation, and the patent, Fingen that we cited? Yeah. The patent owner in that case said, hey, we raised this argument in surreply, and this Court said, sorry, it's been waived, and disregarded that argument. And so, here— That was a situation where the Board didn't address the argument, I take it. The Board, yeah, the Board didn't say, hey, you've waived it, and I'm not going to address it, but the Board didn't address the argument. With respect to arguments that were addressed by the Board, again, my question is, can we override, in effect, the Board's decision to decide the issues? I think that would be under an abuse of discretion review, if that was brought to you in that way. Now, here, on the merits, the Board got it right anyway, and so there's no reason to reach that issue. But what a patent owner does in its arguments, and fundamentally misses in attacking the Board's decision, right, is two problems. One, it ignores the arguments that it actually did make in its patent owner response, which had to be addressed by the Board, and it ignores how one of ordinary skill in the art understands these claims and understands how these switches work. The only evidence of what one of ordinary skill in the art understands came from Dr. Black, and the Board rightly credited that testimony as it was unrebutted. And so, by relying on that testimony and the other evidence with the petition, the Board's conclusion is supported by more than substantial evidence and should be affirmed. So, if I'm... Do you see stored and maintained as being either A, distinct, B, overlapping, or C, effectively the same word? Yeah, I look at that as two sides of the storage coin. You have one entity, the claim is laid out as an apparatus claim, structural elements, chassis management module, and a database. So, one of those structures is storing into the database, and the other one is the receptacle that then receives and keeps that information and holds on to it. I want to address the intrinsic evidence that my opponent is pointing to, and, you know, if you look through that discussion, it's well before the discussion of IP multicast snooping information. I heard him make a reference to IP multicast snooping information in the context of Figure 8. That's not there. Figure 8 is discussing unicast communications only. That's clear from the context. And this MAC and HDI forwarding tables, those are not multicast snooping information in that context. What about the column 19 parenthetical? Doesn't that tie IP multicast back to Figure 8? It ties it back just for the sense of you're sharing information through an IPC message. It's just saying, hey, we pointed and showed you that in Figure 8. It's not talking about the operations that are happening in Figure 8. It's talking about sharing IP multicast snooping information. The discussion of the database starts in column 19 of the patent and is used interchangeably throughout until column 24. And in that discussion, the database is constantly referred to as a receptacle for storage and later retrieval. And so in what we're talking about in the context of the claims and looking at it in the context of the intrinsic evidence, that's what it is. And maintaining here is the other side of the storage coin. And so if you look at the other evidence that they pointed to in their brief, for example, column 23, line 10 to 13, I think if you start a little earlier, line 4, you'll see what's happening there. And it's almost using storing and maintaining as synonyms there. What column again? I'm in column 23, starting at line 4. And what's being described there is with respect to a replication vector. But similar approach, which is chassis management module in the primary switch, stores information in its database, shares it across to the secondary switch. It's maintained in that database. And so there you see they're being used almost synonymously. And to the extent there's a difference here, it's really that the maintaining is sort of giving you a little bit of emphasis on this continued storage. I point the court to the LA Biomedical case. In that case, you had a very similar situation where we had two phrases in one claim like we do here. Factually, also similar in that the patent owner in that case was trying to add limitations arguing that otherwise claim language would be superfluous. And so same thing here. Brazos is saying there needs to be maintaining operations even though operations isn't in the claim. And there, what this court said was that even though you have overlapping claim terms, that's not fatal. And it doesn't compel us to adopt an otherwise unsupported construction of the claims. And that's what we have here is overlapping claims, overlapping terms from the two sides of the storage coin. So the bottom line is your view is maintaining and storage overlap in meaning in this patent, correct? They overlap in meaning. I'm not saying that they're, sorry. And where do you, you're not saying they're complete synonyms. They have some overlap. Where did you take that position in the petition? In the, and so again, remember procedurally this argument was not raised at any time in the patent owner response. In the petition, we've applied the plain and ordinary meaning. And we think that the plain and ordinary meaning is sufficient here because maintaining just like maintaining prices or maintaining files in a file cabinet includes holding onto this information. And so that's shown in the petition is how the database is used. Detail about how maintenance or overlap is new on appeal, you would say that's okay because the argument was never presented by the patent owner to the board? It's not that it wasn't presented to the board. Procedurally, this claim construction argument was raised only in Sir reply. Our first opportunity was at oral argument. We did raise that then. It's not in the joint appendix, but in the transcript. I'd point to pages 18 to 20. And what was the position you took it? Exactly what we've taken in our briefs here is that maintaining just means keeping it, holding onto it. It's the same position we have on appeal. We just were only able to raise it during oral argument because the argument was raised for the first time in Sir reply. So maintaining equals storing? Not that it equals storing, but maintaining is keeping that. I made the same argument, two sides of the same coin, that you have the chassis management module storing into the database, and then the database holds on to that information or keeps it. So, yeah, okay. Okay, I wanted to point, so I pointed to the LA Biomedical case and how that case explains that you can have overlap. I would also point to the Bancorp case. Both of these cases were not addressed by Brazos in reply. The Bancorp case, similarly, you had two phrases, one claim, and the court said, well, that gives rise to an inference, not a presumption, but an inference that there would be different meanings. In that case, the court said, that inference, however, is not conclusive because it's not unknown for different words to be used to express similar concepts or, as it goes on later, in fact, to be synonyms. And that's, again, like the situation we have here. We have two sides of the storage coin, and it's okay from a claim construction perspective for that to be the case, especially when it's so supported by the intrinsic evidence. Do you want to talk about determining? If I may finish my point, then I will move to determining. The last point I wanted to make on the maintaining is that the intrinsic evidence is so supportive of our view. What the other side's position is, remember, is not that some other entity is maintaining. The database itself is maintaining. That's their argument. No one has disputed that a database is an organized collection of data. It's not software instructions. It's not a program. There's nothing in the spec that would tell you a database itself is performing any maintenance operation, as they suggest that it should be. And so it's a completely unsupported construction. And frankly, it does not make sense. It's not consistent with that. And so the pointing to what happens in Figure 8, I just don't—Figure 8 in the discussion, it's not applicable here. I don't think it should be considered applicable. Now, to your point, Judge Bryson, I'll move to the multicast index limitation. Now, Brazos' argument is that the evidence just says that the multicast index is coming from some external source. I don't—that's a made-up fiction. I don't know where that comes from. There's nothing in the prior art. There's nothing in Dr. Black's declaration. And there's nothing in the decision that says it's coming from an external source. What did the board say? The board said—it is on page 36 of the appendix, the opinion—in the combination SANE and supermanian, the control plane determines the global multicast index in conjunction with determining the claim forwarding vector and goes on from there. The control plane, the control plane of a SANE switch is local and internal to a SANE switch. The other side has never argued otherwise. And in fact, in their patent owner response—this is at 1182 to 83 of the appendix—they agree that SANE's control plane is in the SANE switch. And so that finding by the board was supported by the prior art that they cited, numerous paragraphs from Dr. Black's declaration that they cited. And so what's happening here is they're disagreeing with that factual finding and asking this court to reweigh the evidence. But on substantial evidence review, that's not what we do here. And so that factual finding was also well supported and should be affirmed. If there's no questions on that, I'll cede the rest of my time. Thank you, counsel. Mr. Mangrum, as mentioned, you elected to use all your time, but we'll give you one minute for a brief reply. Yes, I want to start with the end of what he talked about. He said Dr. Black said determining is not receiving from an external source. Look, he said the opposite. It's in paragraph 125 of his original declaration. He said the MGID was what they relied for for the index. It's distributed to all line cards. It's provided to all line cards. And then it's used. And he said the use is what's determining. The board found the same thing. I mean, the board summarized at page 44 of their opinion that the, I'm quoting, petitioner contains that each of sub-Irmanian chassis receives the MGID and EPI multicast indexes and uses these indexes to program the hardware MGID something else with all ports. And the board said that that something else is building forwarding vectors. So the use locally, the board attributed to building forwarding vectors, not to determining in the first place. And the board recognized the argument they raised and their own declarant said is the, what they're alleging is the multicast index that was provided globally. And every switch is something it's receiving. Now, I want to address the waiver. We addressed the waiver argument in our briefing. So I'm out of time. But I would just submit that, oh, it looks like it's coming up. For the waiver argument, the board found that for both the negative construction of storing is not maintaining and that determining is not using, the board recognized that that's been an argument from the beginning, even prior to trial. And when you look at how we address the maintaining limitation, just look at arguments in the patent owner response. We circled the whole thing and say what they're alleging is maintaining at a database is not maintaining a database. But they say today that maintaining and storing overlap in their appeal brief, they say it's not the same thing. They say today that a database maintaining is not a database maintaining. It's something else maintaining or the database doesn't have to do it. Counsel, a red light is a red light. Sure. We have your argument and the case is submitted. Thank you.